## ROBERT HUNTINGTON et al. v. HALEY COTTON.

1. STATUTE OF LIMITATIONS.—S. became a bankrupt, and the assignee in bankruptcy sold the premises in controversy as a part of his assets. Previous to this sale, the wife of S. purchased the premises at sheriff's sale, under a judgment rendered against S. prior to his bankruptcy, and afterwards sold the same to C. The united and continuous possession of S.'s wife, after the sale to her, and of C., after his purchase, was seven years before the commencement of the suit; held that the Statute of Limitations barred the recovery of the land by the vendee of the assignee in bankruptcy.

2. MORTGAGOR: INTEREST OF: WHEN SALEABLE UNDER EXECUTION.—If a mortgage be executed on land to secure a contingent, prospective liability of the mortgagor to the mortgagee, reserving the right of possession and enjoyment of the premises in the mortgagor, until default be made in the payment of such liability, the interest of the mortgagor in the land will be subject to seizure and sale under execution, and such sale will convey a good title, except as against the mortgagee.

IN error from the Circuit Court of Leake county. Hon. E. G. Henry, judge.

On the 30th of August, A. D. 1852, the plaintiffs in error instituted an action, under the new Pleading Act, against the defendant in error, to recover possession of certain lands in his possession. The complaint contained a statement of the facts upon which the plaintiffs predicated their title, but it is unnecessary to set them out further than will be noticed in the abstract of the testimony. The defendant pleaded the general issue and two special pleas, setting up the Statute of Limitations as a bar to

the action.  The plaintiff demurred to the special pleas, and after-wards withdrew his demurrer and took issue upon them.

On behalf of plaintiffs, it was proven, that the land in contro-versy was purchased from the general government, by one Thomas, in 1834, and that in 1838 he sold and conveyed the same, in fee simple, to D. S. Skinner, under whom both parties claim title.

Plaintiffs further proved, in support of their title from Skinner, that said Skinner was declared a bankrupt in 1842, and received his final discharge as such, on the 20th day of February, A. D. 1843; that F. S. Hunt was appointed the general assignee in bank-ruptcy, and that as such assignee, in October, 1851, he sold the land in controversy, to the highest bidder, for cash, when they be-came the highest and best bidder, at the sum of $2500 ; that the land had not been returned as a part of his assets by Skinner, in his schedule.  It was admitted that plaintiff was in possession at the time of the commencement of the suit.

Plaintiffs offered in evidence to the jury, the bond of D. S. Skin-ner, executed to the Mississippi Union Bank, and dated the 3d day of June, A. D. 1839, to secure the payment of the stock he had sub-scribed for in that institution; also, the stock mortgage of same date, executed by said Skinner, to the bank ; also, the record of the proceedings, in the nature of a *quo warranto*, against the bank, by which it appeared that a judgment of *ouster* of the fran-chise had been rendered, and that trustees had been appointed to settle up the affairs of the bank; they also offered in evidence, the deed of one of the trustees, conveying said bond and mort-gage to them.  The judgment of forfeiture against the bank was rendered in November, 1846, and the date of the deed of the trustee to plaintiffs, was 29th September, 1847.  Upon objection of defendant this evidence was rejected, and plaintiffs excepted.

The mortgage conveyed the land in controversy to the bank, in fee simple, to secure the stock bond executed by Skinner to the bank, for $3781, and also to secure the payment of privileged loans, which might be made to him by the bank, as a stockholder. The stock-bond was payable, one-fourth in twelve years from the date of the issuance of $10,800 of State bonds, which were there-

after to be issued by the State for the benefit of the bank; and one-fourth in fifteen years, one-fourth in eighteen years, and one-fourth in twenty years, from the date of said bonds. The mortgage also provided, that on the production of certain certificates, showing that there was no incumbrance or lien on the land, that the stock would be issued to Skinner; it further reserved the right to the bank to graduate and reduce the amount of the stock, or reject it altogether, if the security was deemed insufficient; and it reserved the right to Skinner to assign his stock, and provided that when such assignment was made and approved by the bank, the mortgage should be null and void. It further provided that Skinner should have the possession of the land until his stock bond or loan should become due. In other respects the mortgage was similar to other mortgages for the security of a debt.

Defendant proved, that on the 8th day of April, 1839, and on the 6th day of April, 1840, certain judgments were rendered against Skinner, under which, on the 18th day of March, 1844, the land was sold by the sheriff, and Mrs. Skinner became the purchaser. That Skinner and wife were in possession of the land from the date of the mortgage until November, 1848, when she sold it to defendant, who then entered into possession and has kept it ever since. That Mrs. Skinner, from the time of her purchase at sheriff's sale, claimed title to the land as her own property. That the State, in 1838, issued bonds on account of the Union Bank, to the amount of $5,000,000, but had issued none since.

The instructions asked for and given or refused, need not be set out. The defendant had a verdict and judgment, and the plaintiffs sued out this writ of error.

*Robert Huntington*, for plaintiffs in error.

*H. A. H. Lawson*, for defendant in error.

Fisher, J., delivered the opinion of the court.

The plaintiffs in error brought this suit in the Circuit Court of Leake county, to recover a tract of land in the possession of the defendant.

Both parties claimed, indirectly, from one Daniel Skinner. The plaintiffs' title, as set forth in the complaint, was substantially as follows: Daniel Skinner was, in 1842, declared a bankrupt. He omitted to place on his schedule the land in controversy. Hunt, the general assignee, in 1851, discovering this omission, sold the land in the fall of 1851, when the plaintiffs became the purchasers, and received a deed from the said assignee. The complaint contains a long statement in regard to a mortgage, executed in 1839, by Skinner, to the Union Bank ; but as the only object of this statement appears to be to show that the mortgage was, by certain proceedings, extinguished, and not to show title in the plaintiffs, this part of the complaint may be passed over without special notice.

The defendant claims title directly from Daniel Skinner and wife, by virtue of a deed executed to him on the 12th day of May, 1845. This suit was commenced on the 30th of August, 1852. It appears that he immediately went into possession of the land, and hence, the Statute of Limitations, which is relied on, constitutes a good defence to the action. But, aside from this defence, it is clear that the defendant has the superior title to the land. It appears that certain judgments were rendered, in 1839 and in 1840, against Skinner, under which the land was sold on the 18th of March, 1844, when Mrs. Skinner became the purchaser ; and it is her title thus acquired, which was conveyed by Skinner and wife to the defendant. But it is said that the land was then under mortgage to the Union Bank, and could not be sold under an execution at law. It is a sufficient answer to this argument to state, that by the very terms of the mortgage, Skinner was allowed to remain in possession of the land, and to have the full enjoyment of the same until his stock bond, or a loan, if any should be made, should become due. The bond is not set out or shown by the record, nor is it shown that he ever received a loan from the bank.

It is not shown that the stock ever was issued, or that the bond ever could be binding ; and Skinner having, under any view, a chattel interest, and, indeed, under the very terms of the mortgage, a defeasible legal estate, he had an interest which would be sold under execution, and which, when sold, would be good against all

Jordan *v.* Harris et al.

but the bank; and the complainants averring that the purchase of the mortgage by the plaintiffs operated as an extinguishment of it, they must stand where the bank would stand if in full operation, under the same state of case, and are not in a situation to complain of the sale under the executions, because they negative the presumption or possibility of injury by such sale. But, really, this point is of no importance in the case, as the Statute of Limitations is of itself a good defence. It is not deemed necessary to notice the numerous points so ably discussed by counsel; the points already noticed must, under any view, settle the controversy.

Judgment affirmed.